Defendant-appellant, Jacob R. Reeder, appeals his jury convictions in the Clinton County Court of Common Pleas for rape, gross sexual imposition ("GSI"), and failure to register as a sexual offender. We affirm.
Appellant is the father of A.R., a minor and one of the victims in this case. At the time of the offenses, A.R. was nine years old. Appellant had dated A.R.'s mother, Melinda Carter, in 1985, but the relationship ended in 1986. Since that time, Melinda has married, and A.R. now lives with Melinda and half-siblings in Greene County, Ohio. Appellant kept in contact with the children, and in fact, the three oldest children, A.R., M.W., then twelve, and M.C., then seven, often stayed with appellant at his trailer in Clinton County, Ohio during breaks from school.
In late 1996, Melinda found a note written by M.W. which Melinda read as indicating that M.W. was becoming sexually active with a boy in her class. As a result, Melinda pulled M.W. out of her school class and took her to Greene County Children's Services to speak to a case worker. At Children's Services, M.W. denied having sex, and instead, claimed that appellant had molested her when she had visited him in June and July 1996. The allegations were reported to the police, who then interviewed all three sisters. The girls were further interviewed by social workers involved with the case.
Initially, A.R. and M.C. did not say that appellant had molested them. It was in their second interviews that they claimed that appellant had also molested them when they had visited him in June and July 1996. In all of the cases, the molestation occurred when appellant was left alone with one of the girls. The girls were later examined for signs of abuse, but the results were inconclusive. Thus, the evidence against appellant was based upon the statements of the three girls.
An indictment against appellant was filed on April 17, 1997. The indictment was dismissed, and appellant was re-indicted on November 21, 1997. The new indictment included five counts of rape in violation of R.C. 2907.02(A)(1)(b), counts one to five; four counts of GSI in violation of R.C. 2907.05(A)(4), counts six to nine; and one count of failure to register as a sex offender in violation of R.C. 2950.02, count ten. Count ten was based upon a prior conviction for corruption of a minor in Clinton County. The indictment also included specifications that appellant was a sexually violent predator. These specifications were later withdrawn by the state when appellant waived his right to trial by jury on count ten.
Appellant was appointed counsel as an indigent defendant, and a jury trial commenced on December 1, 1997. At trial, the state presented testimony by Melinda Carter, M.W., A.R., and M.C. Officer Forrest of the city of Xenia Police Department and Dr. Ralph Hicks, M.D., who examined the girls, also testified on behalf of the state. On behalf of appellant, Dr. Jolie Brams, Ph.D., generally discussed allegations of sexual abuse and the appropriate techniques to be used in interviewing abuse victims. The state also presented two rebuttal witnesses, Mary Buhrmaster and Margine Gingrich, two of the social workers who were involved in the case.
On the second day of trial, appellant's counsel informed the court that appellant had been taken to the hospital the night before. The reason for appellant's trip to the hospital was not specified. When court resumed the next day, appellant's attorney informed the court that appellant wanted to fire his counsel and have new counsel appointed. Appellant confirmed that this was, in fact, what he wished, because he felt that counsel had not adequately represented him or called certain witnesses. Counsel advised the court that she and appellant had fundamental differences in how they perceived the case, and that, apparently, appellant had little faith in her efforts. The court informed appellant that it was too late to appoint new counsel because it was the second day of a two-day trial. The court also informed appellant that counsel was experienced and had performed competently in the past.
Counsel then began to discuss the issue of appellant waiving a trial on count ten. In the course of this discussion, counsel stated that appellant had an I.Q. of seventy. Counsel stated that she felt appellant did not understand all of what was happening, and appellant agreed. Appellant volunteered that he was taking a variety of medications and questioned why his attorney had not brought his condition before the court. Counsel stated she was concerned about her client's competency, but did not make a motion for a competency evaluation. Counsel then sought to explain her trial strategy to appellant and why he should agree to waive a jury trial on count ten.
Appellant asked what would happen if he simply walked out of the court. When informed that he would be arrested, appellant made a statement about what his bondsman had told him, and that he had a right to walk out of the courtroom and he would be given a new attorney. Appellant then related his differences of opinion with his attorney about what evidence should be presented. After more discussion, appellant agreed to sign the jury waiver form as to count ten, and appellant agreed that his present counsel could continue to represent him. The trial then resumed.
The jury found appellant guilty of three counts of rape and one count of GSI. The remaining two counts of rape were dismissed by the court. The court found appellant guilty of failure to report as a sexual offender. He was sentenced to seven years of imprisonment on count one (rape), an indefinite term of eight to twenty-five years on counts two and four (rape), and two years imprisonment on count seven (GSI), all to be served consecutively. Appellant was also sentenced to six months of imprisonment on count ten (failure to register), to be served concurrently with his other sentences.
Appellant timely appealed, and raises three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN VIOLATION OF MR. REEDER'S RIGHTS TO DUE PROCESS OF LAW AND THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. 1, SEC. 10
AND 16 OF THE OHIO CONSTITUTION WHEN IT FAILED TO INQUIRE INTO THE REASONS FOR HIS REQUEST TO FIRE HIS ATTORNEY.
Appellant contends that the trial court erred when it denied his request for new counsel without inquiring into appellant's reasons for making such a request. After a thorough review of the record, we find that this argument lacks merit.
An indigent defendant has a right to competent counsel, not a right to counsel of his own choosing. State v. Blankenship (1995), 102 Ohio App.3d 534, 558, affirmed (1996), 74 Ohio St.3d 522, citing Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 93. The right to competent counsel does not require that a criminal defendant develop and share a "meaningful" relationship with his attorney. Morris v. Slappy (1983), 461 U.S. 1, 13-14,103 S.Ct. 1610, 1617.
 To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.
State v. Henness (1997), 79 Ohio St.3d 53, 65, certiorari denied (1997), U.S., 118 S.Ct. 422, quoting State v. Coleman (1988),37 Ohio St.3d 286, paragraph four of the syllabus, certiorari denied (1988), 488 U.S. 900, 109 S.Ct. 250. The existence of "hostility and tension" or "personal differences" which do not rise to the level of interfering with the preparation or presentation of a defense are not sufficient to justify discharging court-appointed counsel. See Henness at 65-66. The conflict must be such as to erode counsel's representation of the defendant to the point that it is rendered ineffective. Id. at 66.
An indigent defendant is entitled to appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. Blankenship, 102 Ohio App.3d at 558. In short, the conflict must be so severe that a denial of substitution of counsel would implicate a violation of the Sixth Amendment right to counsel. Id. In the absence of such a Sixth Amendment concern, the decision of a trial court to refuse substitution of counsel will be reversed only if the court has abused its discretion. State v. Pruitt (1984), 18 Ohio App.3d 50, 57.
In the present case, we find that the differences between appellant and his appointed counsel were not such as to justify discharging his attorney and substituting new counsel. Although appellant believed that certain evidence should be presented and certain witnesses called in his trial, counsel was able to explain her strategy to appellant, and appellant agreed to the continued representation. Furthermore, appellant's concerns do not appear to have been related to a lack of competent representation or a flawed trial strategy, but, rather, to which witnesses were to testify or be subpoenaed. In fact, the witnesses which concerned appellant either had yet to testify or were already under subpoena.
It also appears that counsel's recommendation that appellant waive his right to trial by jury on count ten (failure to register) was a cause of the contention. Counsel wanted the court to decide the issue so that evidence of the prior offense would not be admitted to the jury to establish the elements of the charge. Counsel then explained the situation to appellant, who agreed to sign the waiver. Thus, it appears that appellant's disagreement with his counsel was due to his failure to understand the ramifications of not waiving his right to trial by jury on this one issue. This one disagreement, especially considering its quick resolution, did not so disrupt counsel's representation of appellant as to require a substitution of counsel.
A review of the transcript reveals that the trial court did inquire into the reasons for appellant's disagreement with his attorney. Both appellant and his attorney aired their concerns about the case to the trial court. Thus, they were given the opportunity to resolve their differences.
It was in this exchange that the trial court informed appellant that he would not be appointed new counsel. Appellant made his request on the second day of a two-day trial. The trial court informed appellant that his counsel had performed competently before the court in the past, yet still gave appellant an opportunity to defend himself.
Therefore, we find that the trial court did not abuse its discretion in making this decision. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT'S FAILURE TO HOLD A COMPETENCY HEARING DEPRIVED MR. REEDER OF HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ART. I, SEC. 16 OF THE OHIO CONSTITUTION AND R.C. 2945.37.
In his second assignment of error, appellant asserts that the trial court should have held a competency hearing at the time appellant made his request for new counsel because there were clear indications that appellant was not competent to stand trial. After a thorough review of the record, we find that, under the circumstances presented, the trial court did not abuse its discretion by not holding a competency hearing sua sponte.
"[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri (1975), 420 U.S. 162, 171, 95 S.Ct. 896, 903. See, also, Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836. In Dusky v. United States (1960), 362 U.S. 402, 80 S.Ct. 788, the United States Supreme Court set forth the test to determine whether a defendant is competent to stand trial:
 [T]he test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.
Id. at 402, 80 S.Ct. 788, 789. The right to a hearing on the issue of competency rises to the level of a constitutional guarantee "where the record contains `sufficient indicia of incompetence,' such that an inquiry into the defendant's incompetency is necessary to ensure the defendant's right to a fair trial." State v. Berry (1995), 72 Ohio St.3d 354, 359, rehearing/reconsideration denied (1995), 73 Ohio St.3d 1428, certiorari denied (1996), 516 U.S. 1097, 116 S.Ct. 823.
In Ohio, the right to a criminal defendant not to be tried or convicted when incompetent is protected by R.C. 2945.37 which reads in part:
 (A) In a criminal action in a court of common pleas or municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial, the court should hold a hearing on the issue as provided in this section. If the issue is raised after trial has begun, the court shall hold a hearing on the issue only for good cause shown.
 A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense.
Thus, once a trial begins, R.C. 2945.37(A) requires a trial court to hold a hearing on the issue of incompetency "only for good cause shown." The showing of "good cause" has been construed in accordance with the principle set forth in Drope and Pate. Berry, 72 Ohio St.3d at 360. The determination of whether to conduct a mid-trial competency hearing is normally a matter left to the sound discretion of the trial court. Id. In determining whether to sua sponte hold a competency hearing, the trial court should consider doubts expressed by counsel with regard to the defendant's competency, evidence of the defendant's irrational behavior, his demeanor at trial and any prior medical opinion on his competency. State v. Chapin (1981), 67 Ohio St.2d 437,439-440; State v. Draugh (1992), 76 Ohio App.3d 664, 669. When there is sufficient evidence to create a doubt as to the defendant's competence, the trial court may be required to conduct further inquiry on the question, and a trial court must always be alert to circumstances which suggest that the accused may be incompetent to stand trial. State v. Corethers (1993),90 Ohio App.3d 428, 433, appeal dismissed (1994), 68 Ohio St.3d 1470.
In the present case, appellant's counsel did not formally request a hearing concerning whether appellant was competent to stand trial. Therefore, the sole issue presented is whether defense counsel's sole suggestion of incompetency, without any supporting motion, taken together with any then existing evidence of appellant's mental condition, met the requisite "good cause" standard which warrants a competency hearing.
The fact that a defendant is mentally retarded and on medication is not, in itself, enough to support a claim that he was incompetent. R.C. 2945.37(A);[1] State v. Settles (Sept. 30, 1998), Seneca App. No. 13-97-50, unreported, citing Penry v. Lynaugh (1989), 492 U.S. 302, 109 S.Ct. 2934. Competence to stand trial is concerned with the ability of the defendant to understand the proceedings before him and assist in his defense. It is incumbent upon the defendant in a criminal trial to overcome the presumption of competency. R.C. 2945.37(A). The evidence before the court during the discussion of appellant's motion for substitution of counsel supports the conclusion that appellant was cognizant of the facts of his case and the charges against him. Appellant had strong views on what evidence should be presented in his defense. That appellant disagreed with his counsel on this point does not establish that he is incompetent. As counsel herself stated, appellant's perception of the case was different from hers. It is clear from the record that appellant's concerns were based upon his experiences in prior criminal proceedings, and thus it can be said that he had a rational and factual understanding of the proceedings against him and the role of the parties in the case.
It is true that appellant initially placed great reliance upon communications with his bail bondsman prior to the trial. But appellant's misconceptions concerning his right to substitute counsel and the consequences of not waiving his right to trial on count ten were apparently cleared up when counsel explained these matters to appellant. It was at this time that appellant agreed to have counsel continue to represent him and signed the form waiving his right to a jury trial on count ten. Considering the evidence before the trial court as a whole, we find that there was insufficient evidence presented to warrant a hearing on appellant's competence to stand trial. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 MR. REEDER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. I. SEC. 10 OF THE OHIO CONSTITUTION.
In his third assignment of error, appellant argues that he was denied the effective assistance of counsel by the failure of his attorney to move for a competency hearing and her failure to move to withdraw when he sought to obtain new counsel. In light of our resolution of the above assignments of error, we find this assignment of error lacks merit.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied,63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, rehearing denied (1990), 497 U.S. 1050,111 S.Ct. 16, certiorari denied, U.S., 118 S.Ct. 376.
In light of the foregoing discussions with respect to appellant's first and second assignments of error, even if counsel's failure to move to withdraw from the case or move for a competency hearing falls below the objective standard of reasonable competence, appellant has not shown how such deficiencies would have resulted in prejudice to him at trial. Furthermore, appellant has not demonstrated how the result of his trial would have been different if other counsel had been appointed. Without evidence that other counsel would have taken a different approach to the case, and that, in all reasonable probability, such an approach would have resulted in a different outcome, we cannot find that appellant would have been prejudiced by any deficiency in representation. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] R.C. 2945.37(A) provides in pertinent part:
 The court shall not find a defendant incompetent to stand trial solely because he is receiving or has received treatment as a voluntary or involuntary mentally ill patient or mentally retarded resident under Chapter 5122. or 5123. of the Revised Code or because he is receiving or has received psychotropic drugs or other medication under medical supervision, even though without the drugs or medication the defendant might become incompetent to stand trial.